Gijón, Plaintiff and Appellee, v. Surillo et al.,
Defendants and Appellants.

Appeal from the District Court of Humacao in an Action
of Nullity, Etc.

No. 2620.—Decided November 20, 1922.

Inheritance—Natural Child.—According to the revised Civil Code, an acknowl-
edged natural child has a right to inherit from the lawful father of his nat-
ural mother as her representative, and that right must be determined in ac-
cordance with the law in force at the time of the death of the author of
the estate and not in accordance with that in force when the child was born.
Id.—Id.—In this case the plaintiff claimed hereditary rights proceeding from his
maternal great-grandparents, but he only succeeded in proving to the sat-
isfaction of the court his right as to one of his great-grandparents. *Held:*
That the court did not err, because what was allowed was comprised within
what had been prayed for in the complaint.

The facts are stated in the opinion.
*Mr. F. González* for the appellants.
*Mr. A. Aponte, Jr.,* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of
the court.

The judgment appealed from contains the following:

"1. That the possessory title proceedings prosecuted by defend-
ant Manuel Surillo Aponte for the property hereafter described
are null and void. * * * (Description).

"2. That the deed executed in Humacao before notary Manuel
Tous Soto on July 18, 1909, by Manuel Surillo Aponte, Carmen
Surillo García and Joaquín Gijón Surillo for the division of the
estate of Manuel María Surillo Cintrón and María del Rosario
Aponte is also null and void.

"3. That the said property of 180 acres belongs to plaintiff Al-
fredo Gijón Surillo and defendants Manuel Surillo Aponte and
Carmen Surillo García in the proportions of one-third to defendant
Manuel Surillo Aponte and one-third to Alfredo Gijón Surillo and

Carmen Surillo García as the heirs of Pedro Surillo Díaz. The remaining one-third, which belonged to María del Carmen Surillo y Aponte, should be divided among defendant Manuel Surillo Aponte, who shall receive a double share because he is her brother, and Alfredo Gijón Surillo and Carmen Surillo García as the heirs of the said Pedro Surillo Díaz who was entitled to a single share which belongs now to his heirs.

"4. That defendant Manuel Surillo Aponte shall pay the plaintiff Alfredo Gijón Surillo the sum of $2,000 as rents and profits, and also the costs of this suit."

We have examined carefully the pleadings and the evidence and they show that on January 28, 1860, Luis Francisco Surillo executed in favor of his son, Manuel María Surillo y Cintrón, a deed of sale to a rural property in Guayanés, municipality of Yabucoa, which the former sold to the latter "a long time ago." The property of 180 acres sued for in this action is a part of that property.

In 1860 the grantee, Manuel María Surillo, was a widower, his first wife, Manuela Díaz, having died in 1850, leaving a single child named Pedro Surillo y Díaz.

In the same year of 1860, but after the execution of the deed, Manuel María Surillo married María del Rosario Aponte who bore two children named María del Carmen and Manuel.

It was alleged in the complaint and attempted to be proved at the trial that the property in question was acquired by Manuel María Surillo during his first marriage, but we agree with the conclusion of the trial judge that the only conclusion about which there is no doubt is that it was acquired by Surillo prior to his marriage to María del Rosario Aponte.

In 1885 Manuel María Surillo died, leaving as heirs his son Pedro, of the first marriage, and María del Carmen and Manuel, of the second.

Of the two children of the second marriage María del Carmen died prior to December 21, 1900, and Manuel is still

living and is the defendant who is in possession of the property in question.

The other son, Pedro, married Josefa Braulia García, who had two daughters named Carmen and Aurora. Carmen is living and is a party defendant. Aurora died on December 21, 1900, leaving an acknowledged natural child, plaintiff Alfredo Gijón Surillo, who was born on February 4, 1899. Pedro Surillo Díaz died on December 20, 1905.

The history of the family being thus known from the record, let us see what the record shows about the property. There being no will, the property acquired by Manuel María Surillo in 1860 should have passed at his death to his three children, Pedro Surillo Díaz, María del Carmen Surillo Aponte and Manuel Surillo Aponte. Did it so pass? No. Defendant Manuel Surillo Aponte took possesion of it and in 1906 obtained a possesory title judgment which he recorded in the registry. Thereafter, and as a result of a certain suit, a partition was made of the estates of Manuel Surillo Cintrón and his wife, María del Rosario Aponte, wherein it was stated that the property in question was acquired by Surillo during his second marriage, and an agreement reading as follows was also included: "Carmen García Surillo and Joaquín Gijón, as the representative of his son Alfredo Gijón Surillo, agree to sell to Manuel Surillo Aponte at its assessed value the part alloted to Pedro Surillo Díaz after this partition is approved, and the grantee may apply, in the name of Gijón, for the authorization of court to make the sale." This partition was made in 1909 when plaintiff Alfredo Gijón Surillo was a minor, without obtaining the prior authorization of court as required by law.

From the foregoing facts the first, second and third conclusions of the judgment appealed from become clear. They are correct. The possessory title judgment and the partition are null and void. Defendant Surillo Aponte was not

the owner of the whole property. The property did not belong to the conjugal partnership formed by the second marriage. The property of the minor could not be disposed of in the manner attempted without the previous authorization of court. The distribution of the estates of Manuel María Surillo, María del Carmen Surillo y Aponte and Pedro Surillo Díaz, as adjudged in the third conclusion, followed the rules established by law.

The appellants assign six errors in their brief. The first three refer to the admission of evidence. We have examined them and in our opinion they do not require a written statement and discussion on our part. They are manifestly untenable.

The fourth assignment is that being an acknowledged natural child, the plaintiff has no right to inherit as the representative of his natural mother from her lawful father.

If the grandfather had died when the Spanish Civil Code was in force the appellants would be right. In 1912, in the case of *Correa et al.* v. *Correa et al.,* 18 P. R. R. 115, this court laid down the following doctrine:

"Under the provisions of the Spanish Civil Code which was in force in Porto Rico in 1890, an acknowledged natural child had no right to inherit as representative of his putative father from his paternal grandfather."

But in this case the grandfather died in 1905 when the Revised Civil Code was in full force and effect. Sections 905, 913 and 898 thereof provided as follows:

"Sec. 905. Legitimate and acknowledged illegitimate children and their issue succeed to their fathers and other ancestors without distinction of sex or age, and even though they proceed from different marriages."

"Sec. 913. Acknowledged illegitimate children and their issue shall have the same rights of inheritance as lawful children and their issue, and in the form provided in the preceding sections both to inherit in their own right and by the right of representation. Nevertheless, an illegitimate child and his issue shall not have the

right to inherit in the absence of a will from the legitimate children and issue and legitimate collaterals of the father or mother who has acknowledged them, nor may they inherit from an illegitimate child and his issue.

''Parents with respect to the acknowledged illegitimate child and his issue shall have the same rights of inheritance as lawful parents in case of the intestacy of their children and lawful issue.''

''Sec. 898. The right which all the relatives of a person have to succeed him in all the rights which he would have if alive, or which he might have inherited, is called the right of representation.''

The question is not new. It was answered by this court in the case of *Ex parte Smith et al.,* 14 P. R. R. 643, in which the matter was carefully studied and it was finally concluded that ''In accordance with the provisions of our Revised Civil Code in force July 29, 1906, an acknowledged natural grand-child has a right to inherit by right of representation *of* (from) his natural grandfather.''

The appellants allege that the right of the child to inherit is regulated by the law in force at the time of the birth of the child and not by the law in force at the time of the death of the ancestor, and cite in support of the contention the case of *Esterás* v. *Esterás,* 24 P. R. R. 413; but that case has not the scope attributed to it by the appellants.

Subdivision 1 of section 746 of the Revised Civil Code, similar to section 758 of the Spanish Civil Code, provides as follows:

''Sec. 746. In order to determine the qualification of the heir or legatee, the time of the death of the person whose succession is in question shall be taken into consideration.''

In the case of *Ex Parte Smith et al., supra,* the court said:

''The hereditary rights of a grandchild to inherit by right of representation from his paternal grandfather, are governed by the laws in force at the time of the death of his grandfather whose estate is to be distributed and not by the laws in force at the death of the father.''

And in the case of *Correa et al.* v. *Correa et al., supra,* the court said:

"In order to study this question properly, it is first necessary to fix the dates when the grandparents died, since it is a well-known principle that the rights of heirs should be governed by the law or laws in force at such time."

The fifth assignment raises the same question as the first. The appellants maintained that it having been alleged in the complaint that the property in question was acquired by Manuel María Surillo during his first marriage and that fact not having been proved, the complaint should have been dismissed, the court being without power to find that the property was acquired while Surillo was a widower.

The deed shows that the sale had been made prior to its execution. A witness was called to prove that Surillo was already in possession of the property as owner while his first wife was alive. Nevertheless, from this evidence it does not appear as clearly as it should that the property was acquired during the first marriage, and the court was justified in fixing the date of the deed as the date of the acquisiton, and on that date the grantee was a widower. That finding reduced the extent of the plaintiff's claim, but a part of it remained. The plaintiff sued for his hereditary interest in a property alleged to have belonged to his maternal great-grandparents and could prove with certainty only that the property belonged to his great-grandfather. What the court allowed is comprised within the prayer of the complaint; therefore, its judgment was valid. *Gandía* v. *Trías et al.,* 29 P. R. R. 629, 661.

It remains to examine only the question relative to the fourth conclusion of the judgment raised by the sixth and last assignment of error.

A claim was made for $20,000 as rents and profits received. The court allowed $2,000. The property is one of at least 180 acres whose minimum value is $50 the acre.

The defendant has been in possession of the property for more than twenty years. A considerable number of acres was devoted to the cultivation of sugar cane during the best seasons. The evidence showed that land of a similar class rented at a price per acre as high as $8 a month. Even if the rent should be fixed at fifty cents a month, a simple arithmetical calculation would give a total greater than the amount allowed by the court. We believe that the round sum of $2,000 is justified by the evidence and, therefore, that the last conclusion is also correct.

The judgment appealed from must be

*Affirmed.*

Justices Aldrey, Hutchison and Franco Soto concurred.

Mr. Justice Wolf took no part in the decision of this case.